FRANCISCA ALBINA MATÍAS Y LORENZO, demandante y apelada, *v.* ALFREDO RAFUCCI BAYRON, demandado y apelante.

No. 3361.—*Visto:* Diciembre 11, 1924.  *Resuelto:* Abril 21, 1925.

1. APELACIÓN Y ERROR—SEÑALAMIENTO DE ERRORES—CUESTIONES RESUELTAS DESPUÉS DE INTERPUESTA LA APELACIÓN.—El Tribunal Supremo no considerará errores señalados por el apelante cuando se refieran a cuestiones resueltas por el tribunal inferior después de interpuesta la apelación.

2. TUTOR Y PUPILO—NOMBRAMIENTO, CAPACIDAD Y TÉRMINO DEL CARGO—NOMBRAMIENTO A MENOR EMANCIPADO POR RAZÓN DE MATRIMONIO.—Procede el nombramiento de tutor especial a un menor emancipado por razón de matrimonio a fin de que otorgue o niegue su consentimiento en los casos fijados por la ley.

3. TUTOR Y PUPILO—NOMBRAMIENTO, CAPACIDAD Y TÉRMINO DEL CARGO—NOMBRAMIENTO A SOLICITUD DE UN MENOR EMANCIPADO POR RAZÓN DE MATRIMONIO.—Nombrado un tutor a solicitud de un menor emancipado por razón de matrimonio, aunque de los términos en que se hiciera el nombramiento pudiera entenderse que se designó un tutor general, el nombramiento no es nulo ya que lo menos está comprendido en lo más.

4. MENORES—PROPIEDAD Y TRASPASOS—MENOR EMANCIPADO—AUTORIZACIÓN JUDICIAL PARA VENDER.—Un menor emancipado por razón de matrimonio no necesita autorización judicial para vender una finca de su propiedad.

5. TUTOR Y PUPILO—NOMBRAMIENTO, CAPACIDAD Y TÉRMINO DEL CARGO—INSCRIPCIÓN DEL NOMBRAMIENTO EN EL REGISTRO DE TUTELAS.—No es necesario inscribir en el registro de tutelas el nombramiento de tutor especial de que habla el artículo 309 del Código Civil.

SENTENCIA de *Tomás Bryan,* J. (Aguadilla), declarando sin lugar la demanda, con costas.  *Revocada,* declarando sin lugar la demanda, sin costas.

*Reichard & Reichard,* abogados del apelante; *García Méndez & García Méndez,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Solicítase en este pleito la nulidad de un nombramiento de tutor, la inexistencia de la venta de una finca rústica, la

entrega de dicha finca, la restitución de cuatro mil dólares de frutos percibidos y el pago de las costas del litigio.

Alegó el demandado por vía de excepción previa que la demanda no aducía hechos suficientes, y su excepción fué declarada sin lugar, concediéndosele diez días para que contestara la demanda.

Notificado el demandado de la resolución de la corte, solicitó su reconsideración, dejando transcurrir el tiempo que se le había concedido sin archivar su contestación. Pidió la demandante y obtuvo que se anotara la rebeldía del demandado y celebrado el juicio en ausencia de éste, la corte, el 4 de febrero de 1924, dictó sentencia declarando la demanda con lugar.

El 12 de febrero solicitó el demandado que se le eximiera de los efectos de la sentencia y el 8 de marzo siguiente apeló de ella para ante este tribunal. El once del propio marzo, la corte se negó a eximir al demandado de los efectos de la sentencia, y tramitada la apelación, eleváronse finalmente los autos, celebrándose la vista del recurso con la sola asistencia del abogado de la parte apelada.

[1] De acuerdo con lo solicitado por la parte apelada, dejaremos de considerar los errores que señala el apelante en relación con la apertura de rebeldía. Aquí se apeló de la sentencia y, como hemos visto, la negativa de la corte a eximir al demandado de los efectos de la sentencia se decretó después de interpuesta la apelación.

Los hechos tales como resultan de las alegaciones de la demanda y de las pruebas practicadas por la demandante, son así:

Por escritura pública otorgada el 4 de marzo de 1902 Pedro Badillo vendió una finca situada en Aguada de treinta y una y media cuerdas de terreno a la menor Francisca Albina Matías y Lorenzo—la demandante—representada por su padre, por la suma de $242.10, inscribiéndose la compra en el registro de la propiedad.

El 23 de abril de 1915 la dicha Francisca Albina Matías

y Lorenzo siendo aún menor y hallándose emancipada por razón de matrimonio, presentó una solicitud jurada en la Corte de Distrito de Aguadilla que, copiada a la letra, en lo pertinente, dice:

"Que es menor de 21 años, según comprueba con la partida de nacimiento que se acompaña, de la que resulta que su edad es 19 años y medio.—2. Que se emancipó al contraer matrimonio con Anastacio Carrero, pero habiendo éste fallecido en 10 de octubre último, quedó viuda y sin ninguna persona que la represente por ser huérfana de padre y madre, carecer de abuelos y hermanos vivos mayores de edad.—3. Que desde el fallecimiento de su esposo, ha tenido grandes dificultades y trastornos en la administración de sus bienes, pues los pocos parientes que tenía sólo han procurado explotarla y careciendo ella de capacidad y experiencia, resulta que ha contraído deudas, tiene varias reclamaciones pendientes, estando embargada la finca de su propiedad y de no intervenir una persona capacitada y con autoridad legal pronto quedará totalmente insolvente, perdiendo lo poco que pueda salvar de los bienes que posee.—4. Que por tales razones desea y cree necesaria en vista que es una menor de 21 años, que se le nombre un tutor a pesar de estar emancipada, a fin de que dicho tutor le procure arreglar los asuntos y reclamaciones que tenga pendientes y salvarle todo lo posible de su caudal.—5. Que los bienes que posee son únicamente una finca de 31 y media cuerdas, en el barrio de Río Grande de Aguada, valorada en setecientos dólares.—6. Que dón Rafael Ferrer, comerciante, propietario y vecino de esta ciudad es persona de toda confianza y capacitado enteramente por su rectitud, probidad y experiencia para desempeñar el cargo de tutor de la exponente, siendo su deseo sea nombrado dicho Ferrer para tal cargo, con relevación de fianza.—Por lo expuesto suplico a la Hon. Corte que después de cumplidas todas las formalidades legales dicte resolución nombrando tutor de la promovente Francisca Albina Matías Lorenzo a don Rafael Ferrer, con relevación de fianza y con los demás pronunciamientos de la Ley."

El 1 de mayo de 1915 la corte resolvió la solicitud así:

". . . . se resuelve nombrar tutor dativo de dicha peticionaria a don Rafael Ferrer, vecino de esta ciudad, casado, comerciante y propietario, a fin de que represente a dicha menor, que es viuda y carece de padres, abuelos paternos y maternos y de hermanos ma-

yores de edad que puedan llevar su representación, para que con arreglo a la Ley complete su personalidad en todos aquellos asuntos en que dicha menor no pueda hacerlo personalmente, en juicio y fuera de él, con las demás facultades en derecho necesarias, debiendo dicho tutor prestar fianza por la suma de 500 dollars y prestar el juramento de ley, y hecho todo esto se resolverá lo demás que fuere procedente.''

El 4 de mayo de 1915 el tutor nombrado prestó la fianza exigida por la corte. El propio día aparece presentada una moción por los abogados a nombre de la peticionaria y el tutor haciendo constar que los bienes de la pupila consistían en la finca descrita en la solicitud. Archivado el juramento de aceptación del cargo por parte del tutor, la corte dictó el 6 de mayo, una resolución que dice:

"Habiendo el tutor nombrado D. Rafael Ferrer prestado la fianza que se le señaló y el juramento de ley, se le defiere el cargo confiriéndole las facultades en derecho necesarias para que pueda representar a su pupila en juicio y fuera de él, así como en todos aquellos asuntos en que dicha pupila no pudiere con arreglo a la ley hacerlo por sí; inscríbase esta tutela en el libro de Tutelas a cargo del Secretario de esta Corte, librándose el oportuno mandamiento.''

La tutela quedó inscrita el 11 de mayo de 1915.

La escritura en que consta la venta cuya declaración de inexistencia se solicita no se aportó como prueba, constando de una certificación expedida por el registrador de la propiedad de Aguadilla, en relación con ella, lo que sigue:

"Que por escritura número cincuenta de fecha siete de mayo de mil novecientos quince, ante el Notario Arturo Reichard del Valle, la descrita finca, . . . . fué vendida a Alfredo Rafuchi y Bairón, quien es su actual dueño, por la suma de un mil dolars, de los cuales el comprador se reservó ciento sesenta dolars para pagarlos a Don Alfredo Blasco y así cancelar el embargo trabado sobre la misma finca, según la anotación letra 'A.'—4. Que en la escritura de venta o sea la número cincuenta citada, compareció Francisca Albina Matías como menor emancipada por el matrimonio y asistida y con el expreso consentimiento de su tutor don Rafael Ferrer Solano, siendo

la referida Francisca Albina Matías en la fecha del otorgamiento de la escritura de venta al señor Rafuchi, de estado viuda, de diez y nueve y medio años de edad, propietaria y vecina de Aguadilla.''

¿Procedía el nombramiento de tutor? En el caso de que procediera, ¿se trata de un tutor general o de uno especial? ¿Era necesaria la autorización judicial que para la venta de bienes de menores exige la ley? ¿Pudo actuar válidamente el tutor sin estar inscrito su nombramiento en el registro de tutelas? Veámoslo.

[2] Dice el artículo 309 del Código Civil Revisado, tal como quedó enmendado en 1906 (Leyes de 1906, p. 24), Comp. de 1911, página 662, ''El menor, sea varón o hembra, queda de derecho emancipado por el matrimonio. No obstante, para enajenar o hipotecar los bienes inmuebles o tomar dinero a préstamo necesitará el menor emancipado por razón del matrimonio el consentimiento de su padre, en su defecto, el de su madre, y, en su caso, el de su tutor.''

La emancipación por razón de matrimonio está reconocida y regulada por la ley. El título XI del libro I del Código Civil trata de la Emancipación y de la Mayor Edad. La emancipación carece de antecedentes romanos y la omiten las Partidas. ''Según la ley 47 de Toro,'' dice la Enciclopedia Jurídica Española, volumen XI, página 350, ''la emancipación por el matrimonio era *en todas las cosas para siempre.* Y la ley 48 (3ª tít. V, lib. X Nov. Recop.), dispuso que 'de aquí adelante el fijo o fija, casándose e velándose, se ayan para sí el usufructo de todos sus bienes adventicios, puesto que (aunque) sea vivo su padre, el cual sea obligado a gelo restituir, sin le quedar parte alguna del usufructo dellos.' Pero las leyes de Toro no fijaron la edad en que el marido podía administrar los bienes matrimoniales; lo cual vino a determinar, completando así la doctrina de dichas leyes, una pragmática de Felipe IV, que es la ley 7ª, tít. II, lib. X de la Novísima Recopilación, que la señaló en dieciocho años, quedando, no obstante, sujeta a

notables limitaciones la capacidad jurídica del que no había cumplido los veinticinco.

"Hoy, según el Código Civil, el matrimonio produce de derecho la emancipación, y por consiguiente el menor de edad puede regir su persona y bienes como si fuera mayor, y administrar los bienes de la sociedad conyugal, no habiendo pacto en contrario, con más los parafernales que ante notario le hubiere entregado la mujer para que los administre, todo ello con las siguientes restricciones. . . . ."

El carácter de la emancipación es permanente e irrevocable. "El hijo emancipado," dice la obra citada en el mismo volumen, página 349, "no vuelve ya a la patria potestad, por regla general, aunque cese la causa de la emancipación. El artículo 319 del Código Civil, separándose en ello de la legislación anterior, que sometía nuevamente al hijo al poder del padre cuando incurría en ingratitud grave respecto de éste *deshonrándolo malamente de palabras o de fecho* (ley 19, tít. XVIII, Part. 4ª), declara que 'concedida la emancipación, no podrá ser revocada'; y aunque el precepto se refiere indudablemente a la emancipación voluntaria, según advierte la palabra *concedida,* el principio de irrevocabilidad alcanza a los otros dos modos de emancipar, por la mayor edad o por el matrimonio, fuera de los casos de nulidad de éste por motivos que demuestren no haber tenido lugar la celebración del mismo, o de su anulación por mala fe de los contrayentes o de uno de ellos, en cuyos supuestos, según la doctrina del artículo 69 del Código sobre efectos civiles del matrimonio declarado nulo, queda sin efecto la emancipación, para ambos o para el que obró con mala fe, renaciendo la potestad del padre o de la madre respectivos, si no ha llegado el hijo a emanciparse por la mayor edad."

Existe variación entre los preceptos del Código Civil Revisado y los del Código Civil antiguo en materia de emancipación pero en su esencia, en el aspecto que estudia-

mos, son similares. El menor queda emancipado para regir su persona y bienes, pero para enajenar o hipotecar los bienes inmuebles o tomar dinero a préstamo necesita el consentimiento de su padre, en su defecto, el de su madre, y, en su caso, el de su tutor.

A virtud de lo expuesto y examinado el título X del Código Civil, se concluye que en casos de esta naturaleza procede el nombramiento de un tutor únicamente para que otorgue o niegue su consentimiento en los casos fijados por la ley, siendo en tal virtud el nombrado un tutor especial y no el general que prescribe el estatuto. El legislador lo llamó tutor como pudo llamarlo defensor o de otro modo.

El objeto de la tutela en general, dice el art. 237 del Código Civil, es "la guarda de la persona y bienes, o solamente de los bienes, de los que no estando bajo la patria potestad, son incapaces de gobernarse por sí mismos." Esas personas incapaces las nombra la misma ley—artículo 238 del Código Civil—y entre ellas no figuran los emancipados. A éstos se les considera capaces de gobernarse a sí mismos.

El menor emancipado por razón de matrimonio está autorizado por el artículo 310 del Código Civil a comparecer en las cortes de distrito representando sus derechos. Así lo hizo la menor de que se trata en este caso archivando el escrito que insertamos en los comienzos de esta opinión. Analizado ese escrito y las resoluciones de la corte a que dió origen, existe una verdadera confusión con respecto a si lo que se pidió y obtuvo fué el nombramiento del tutor general a que se refiere el título X del Código, o el especial de que trata el título XI que era el que en verdad procedía. De todos modos, un tutor fué designado recayendo el nombramiento en la persona recomendada por la menor, confiriéndosele al nombrársele y al deferírsele el cargo luego de prestados el juramento y la fianza, más facultades de las que en verdad estaba llamado a ejercer. Lo menos está comprendido en lo más y habiéndose manifestado en el es-

crito inicial y luego en otro específico que los únicos bienes
de la menor consistían en la finca de que se trata, expre-
sándose en la petición que había deudas y reclamaciones
pendientes estando embargada la repetida finca, y la necesi-
dad de que interviniera una persona capacitada y con auto-
ridad legal para que la menor no perdiera lo poco que podía
salvar de sus bienes, el tutor nombrado estaba autorizado
para prestar el consentimiento para la venta de la finca en
cuya operación intervino personalmente la menor emanci-
pada que ahora pide que se declare inexistente.  De acuerdo
con la ley en casos de esta naturaleza el que verdaderamente
contrata es el propio menor emancipado personalmente,
compareciendo al acto el padre, la madre o el tutor a los
únicos efectos de dar su consentimiento.

[4] La autorización judicial no es necesaria.  Manresa
en el tomo 2 (2da. ed.), página 683 de sus Comentarios, dice:

"¿Bastará el consentimiento del padre, madre o tutor para la
validez de los actos o contratos antedichos que celebre el menor
emancipado, o será necesaria además la autorización judicial?  El
art. 317, que estamos comentando, sólo exige aquel consentimiento,
y por consiguiente, él solo basta, y no es necesaria la aprobación ni
la licencia judicial para la validez del acto o contrato.  En los ca-
sos en que el código ha estimado necesario este requisito, lo ordena
expresamente, como puede verse en los artículos 164, 188, 225, 1361
y otros, cuyos casos son distintos del actual; y como para éste no
exige dicho requisito el presente artículo, es indudable que no es
necesario para la validez del acto o contrato, y que basta el con-
sentimiento del padre, madre o tutor. . . . .

"En apoyo de la doctrina expuesta, sobre ser innecesaria en es-
tos casos la autorización judicial, concluiremos citando la resolución
de la Dirección General de los Registros de 3 de junio de 1890."

[5] Resta sólo considerar la cuestión relativa al registro
del nombramiento en el libro registro de tutelas.  Si el fin
de nuestra decisión fuera imponer un castigo a los que di-
rigieron este asunto, no vacilaríamos un momento en con-
firmar la sentencia apelada.  Era tan fácil haber presentado

una petición inicial concreta invocando el artículo 309 del Código Civil y sobre todo después de dictada la orden de 6 de mayo en los términos en que aparece y existiendo como existía el artículo 243 del Código Civil, que no se concibe qué se actuara sin registrar previamente el nombramiento, fuera o no el registro necesario, como se hizo unos días después. Pero nuestra misión no es castigar sino interpretar la ley tal como la entendemos y así aplicarla al caso que se somete a nuestra consideración.

Después de un estudio detenido, sostenemos que no es necesario el registro del nombramiento del tutor especial de que habla el artículo 309 del Código tantas veces citado y por lo tanto que basta el nombramiento y el discernimiento para que pueda entrar a desempeñar el cargo.

El artículo 243 del Código que exige el registro de la tutela como condición previa al desempeño del cargo, se refiere a la tutela en general. Forma parte del título X del libro I del Código. Nada dispone el legislador en el título XI del propio libro al referirse al tutor llamado a dar o negar su consentimiento al emancipado, con respecto al registro. La parte apelada en su extenso alegato no ha citado precepto alguno concreto o jurisprudencia aplicable y los comentaristas que hemos consultado nada dicen sobre el particular.

Siendo ese el caso, no alegándose fraude y fundada la nulidad pedida y decretada exclusivamente en que no se había nombrado el tutor que exije la ley y en que si se estimara que se había nombrado su nombramiento no había sido inscrito cuando la escritura de venta se otorgó; apareciendo que el nombramiento del tutor se hizo y que el registro no era necesario, caen por su base la demanda y la sentencia, *debiendo revocarse la última y declararse sin lugar la primera, sin especial condenación de costas.*

El Juez Asociado Señor Franco Soto, disintió.